UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

Case No.   2:25-cv-04504-HDV-JC                                  Date   August 6, 2025

Title   *Ramon Canales v. Webasto Thermo and Comfort North America, Inc., et al.*

Present: The Honorable   Hernán D. Vera, United States District Judge

|  Wendy Hernandez  |  Not Reported  |
|---|---|
|  Deputy Clerk  |  Court Reporter  |

Attorney(s) Present for Plaintiff(s):          Attorney(s) Present for Defendant(s):

None Present                                                  None Present

**Proceedings:   (IN CHAMBERS) ORDER DENYING MOTION TO REMAND AND MOTION TO STRIKE [21, 25]**

Before the Court is Plaintiff Ramon Canales' Motion to Remand, [Dkt. No. 21], and Motion to Strike evidence submitted in opposition to the Motion to Remand, [Dkt. No. 25]. Plaintiff contends in the main that Defendants have failed to establish complete diversity of the parties and the amount in controversy sufficient to support subject matter jurisdiction.

The Court disagrees. As discussed below, the Court finds that the Defendants have established through competent evidence that they are all citizens of Michigan and the Plaintiff is a citizen of California. Moreover, Defendants have established through payroll records that Plaintiff's yearly salary is $86,520.29. Considering this is an employment discrimination action where Plaintiff is seeking lost wages and benefits for a period greater than a year, the $75,000 amount-in-controversy requirement is easily met. Both motions are denied.

**I.   BACKGROUND**

Plaintiff alleges that, after 26 years of employment, he was wrongfully terminated in May 2024. Complaint ¶¶ 12, 15a [Dkt. No. 1-1]. Plaintiff also alleges that he was subject to discrimination, harassment, and retaliation. *Id.* ¶¶ 14,

30, 38, 45–46, 60, 63.  Plaintiff avers that these adverse employment actions were taken against him because of his age.  *Id.* ¶¶ 11–13, 15.

On April 1, 2025, Plaintiff initiated this action in the Los Angeles Superior Court against his employer, Webasto Thermo & Comfort North America, Inc. ("Webasto"), and two of Webasto's employees, Human Resources representative Valerie McKeachie and Technician Manager Jim Cowen.  Complaint ¶¶ 2, 11, 14–15.  Plaintiff asserts claims under California law for violations of the Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900, *et seq.*; breach of contract not to terminate employment without good cause; negligent hiring, supervision, and retention; intentional infliction of emotional distress; and wrongful termination in violation of public policy.  *Id.* ¶¶ 21–72.  Webasto filed a Notice of Removal on May 19, 2025, [Dkt. No. 1], to which the individual defendants consented, [Dkt. Nos. 1-3, 1-4].

Plaintiff filed a Motion to Remand on June 18, 2025, arguing that Webasto fails to establish federal subject matter jurisdiction, and objecting to the declarations submitted in support of Webasto's Notice of Removal (the "NTR Declarations"), [Dkt. No. 22].  Plaintiff sought attorney's fees in connection with the remand.  Defendants opposed ("Remand Opp."), [Dkt. No. 24], accompanying their opposition with a response to Plaintiff's objections to the NTR Declarations, [Dkt. No. 24-3], and further declarations (the "Opp. Declarations"), [Dkts. No. 24-1, 24-2].  Plaintiff filed a reply ("Remand Reply"), [Dkt. No. 26], objections to the new Opp. Declarations, [Dkt. No. 26-1], and a Motion to Strike a settlement demand submitted with the Opp. Declarations, [Dkt. No. 25].  Defendants opposed Plaintiff's Motion to Strike, seeking sanctions and attorney's fees in connection with it ("Strike Opp."), [Dkt. No. 30], and Plaintiff replied ("Strike Reply"), [Dkt. Nos. 31, 32].  On July 31, 2025, the Court heard oral argument and took these matters under submission.  [Dkt. No. 34].

## II.   LEGAL STANDARD

A defendant may remove a case from state court pursuant to the federal removal statute, 28 U.S.C. § 1441.  The party seeking removal bears the burden of establishing federal jurisdiction.  *See Prize Frize, Inc. v. Matrix, Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999).  The removal statute is strictly construed and there is a "strong presumption" against removal jurisdiction.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citation omitted); *see Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941).  If the court lacks subject matter jurisdiction

or there exists any defect in the removal procedure, a federal court may remand the case to state court. *See* 28 U.S.C. § 1447(c).

## III.  DISCUSSION

Defendants contend that the Court has diversity jurisdiction over this case. Notice of Removal ¶ 1. Such jurisdiction exists when there is complete diversity of parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Plaintiff argues that Defendants have failed to establish both the diversity of the parties and the amount in controversy. Motion to Remand at 7–11.

### A. Complete Diversity of Parties

A defendant may remove an action to federal court based on diversity jurisdiction if "the citizenship of each plaintiff is diverse from the citizenship of each defendant," and "no defendant 'is a citizen of the State in which such action is brought.'" *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (quoting 28 U.S.C. § 1441(b)).

An individual is a citizen of the state where they are domiciled, which is the place where they reside with the intent to remain or to which they intend to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). A corporation is a citizen of the states in which it is incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c). A corporation's "principal place of business" is the place where its "officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). "[I]n practice it should normally be the place where the corporation maintains its headquarters." *Id.* at 93.

Plaintiff's complaint alleges that he is a resident of the Los Angeles County, California, and he does not provide evidence supporting a finding of citizenship elsewhere. Complaint ¶ 1. Similarly, Plaintiff alleges that Defendant Cowen is a resident of Wayne County, Michigan and that Defendant McKeachie is a resident of Clinton County, Michigan. Complaint ¶¶ 2b–c. Cowen declares that he is a resident of Ortonville, Michigan, [Dkt. 1-4] ¶¶ 3–4, and McKeachie declares that she resides in Saint Johns, Michigan, [Dkt. 1-3] ¶¶ 3–4.

As to Webasto, it is a corporation incorporated in Michigan. Notice of Removal at 12–13. Plaintiff argues that Webasto has not met its burden to show

that its principal place of business is not in California. Motion to Remand at 8–11. Plaintiff is correct that the allegations regarding Webasto's principal place of business in the NTR Declarations were somewhat conclusory. *See* Declaration of Valerie McKeachie in Support of Webasto's Notice of Removal ("McKeachie NTR Decl.") [Dkt. 1-2] ¶ 5 ("Webasto's principal place of business is located at 15083 North Road, Fenton, Michigan 48430.").[1]

However, in opposition to remand, Webasto submitted an additional declaration from McKeachie which provides far more detail into Webasto's operations. McKeachie attests that:

> 4. All of Webasto's executive officers reside and perform their duties in the State of Michigan.
>    a. Webasto's President, Gregg Hanchett, is based out of Webasto's corporate office located at 15083 North Road, Fenton, Michigan 48430 ('Principal Place of Business').
>    b. Webasto's Secretary and Chief Compliance Officer, Suat Sahin, is based out of Webasto's Headquarters.
>    c. Webasto's Assistant Secretary, Ana Favila Tinoco, is also based out of Webasto's headquarters.
> 5. Nationwide operations and control as to [Webasto's] Human Resources, Information Technology, Finance Departments, Sales and Purchasing, Marketing, Engineering originate from Webasto's Principal Place of Business.
> 6. Webasto's legal department also originates out of Webasto's Headquarters.
> 7. Webasto's Board of Directors also hold Board Meetings at Webasto's Headquarters.

---

[1] Plaintiff's objection to the quoted portion of McKeachie's NTR Decl., [Dkt. No. 22], is **sustained** on the ground that it is conclusory. Plaintiff's objection to the part of McKeachie's NTR Decl. that states that Webasto is incorporated and organized under the laws of the State of Michigan is **overruled**. McKeachie declared that, in her role as Human Resources Specialist, she had personal, first-hand knowledge of and the opportunity to review business records reflecting Webasto's operations and corporate structure. McKeachie NTR Decl. ¶¶ 2–3. She thus had the proper personal knowledge and foundation for this statement.

Declaration of Valerie McKeachie in Support of Defendant's Opposition ("McKeachie Opp. Decl.") [Dkt. No. 24-2] ¶¶ 4–7.[2] Plaintiff has offered no evidence indicating that Webasto's "nerve center," from where its "officers direct, control, and coordinate the corporation's activities," is in California. The Court thus concludes that Webasto's principal place of business is in Michigan.

Because Plaintiff is a citizen of California and all Defendants are citizens of Michigan, there is complete diversity between the parties.

### B. Amount in Controversy

Diversity jurisdiction also requires that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). "Where . . . it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (citation omitted). "[T]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [the] defendant's liability." *Lewis v. Verizon Commc'ns Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Accordingly, "in assessing the amount in controversy, a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Campbell v. Vitran Express, Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (citation omitted). The removing party need only include a "short and plain statement" setting forth "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). Where the plaintiff challenges the removing defendant's allegations, however, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 82.

In this case, Plaintiff seeks economic damages, including "lost past and future income and employment benefits," "interest on unpaid wages," emotional

---

[2] Plaintiff objects that these statements are conclusory, vague, lack foundation, and lack evidentiary support. [Dkt. 26-1] at 2–5. These are factual statements, not conclusions of law, for which McKeachie has proper foundation. *See supra* note 1; McKeachie Opp. Decl. ¶¶ 1-2. Plaintiff's Evidentiary Objections Numbers 2, 3, 4, and 7 to the Opp. Declarations are thus **overruled.**

distress damages, punitive damages, attorney's fees, and costs.  Complaint ¶¶ 16–19, Prayer.

Defendants have alleged that Plaintiff's yearly salary was $86,520.29 in 2023.  Notice of Removal ¶ 26; McKeachie NTR Decl. ¶ 6, Ex. B-1 [Dkt. 1-2] at 5 ("W-2").  This is already greater than the jurisdictional threshold.  Plaintiff objects that the W-2 actually reports only $74,818.92 in the "Wages, Tips, and Other Compensation" box and Defendants have provided no explanation for the discrepancy between this figure and the $86,520.29 figure.  Motion to Remand at 7–8; [Dkt. 22] at 3-4.[3]

Studying the W-2, however, it appears that $86,520.29 was Plaintiff's "Gross Pay," to which $1,209.84 in "GTL" was added and from which $7,786.87 in "401(k)" and $5,124,32 in "Other Cafe 125" was subtracted to reach "Reported W-2 Wages" of $74,818.92.  These additions and subtractions appear to reflect adjustments for Plaintiff's employment benefits, including life insurance, retirement contributions, and a cafeteria plan.  Because Plaintiff seeks to recover lost employment benefits, *see* Complaint ¶ 16, the Court concludes that the larger sum of $86,520.29 is properly included in the amount in controversy.

But even if $74,818.92 is the correct yearly salary (equating to $6,234.91 in monthly salary) for amount-in-controversy purposes, Plaintiff alleges that he was fired more than a year ago, in May 2024.  Complaint ¶¶ 12, 15.  Plaintiff alleges that he "has sustained and *continues to sustain* substantial losses of earnings and other employment benefits" for over 14 months—and counting.  *Id.* ¶¶ 24, 32, 39 (emphasis added); *see Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018) ("Where, as here, a plaintiff's complaint at the time of removal claims wrongful termination resulting in lost future wages, those future wages are included in the amount in controversy.").  At $6,234.91 a month, that is already $87,288.74, which again exceeds the jurisdictional threshold.

Plaintiff also seeks emotional distress and punitive damages, as well as attorney's fees and costs.  Complaint ¶¶ 17–19, Prayer.  Plaintiff concedes that all

---

[3] Plaintiff also objects that the W-2 is inadmissible hearsay, not properly authenticated, irrelevant, and prejudicial. [Dkt. No. 22] at 3–4.  But McKeachie's declaration laid the foundation for the W-2's admissibility as a business record.  McKeachie NTR Decl. ¶¶ 2–3; Fed. R. Evid. 803(6), 903(b)(1).  The Court has considered the possible reasons for the discrepancy between the wages and the Box 1 amount, and does not rely solely on the larger amount.  The objection is **overruled**.

of these are in theory properly part of the amount in controversy but contends that Defendants have failed to supply sufficient proof of their likely amounts.  Remand Reply at 7–9; *see also Fritsch*, 899 F.3d at 795 ("[The Ninth Circuit] require[s] a removing defendant to prove that the amount in controversy . . . exceeds the jurisdictional threshold by a preponderance of the evidence.  [It] also require[s] the defendant to make this showing with summary-judgment-type evidence.").[4]  Because the Court finds that the Defendants have provided sufficient proof that Plaintiff's lost income alone exceeds the jurisdictional threshold, it need not address these additional components of the amount in controversy.[5,6]

The requirements for diversity jurisdiction are therefore met, and the Motion to Remand is **denied**.[7]

**IT IS SO ORDERED.**

---

[4] The Court is satisfied that the proof of Plaintiff's lost income has been made by summary-judgment-type evidence.  *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 ("The parties may submit . . . affidavits or *declarations*, or other 'summary-judgment-type evidence.'" (emphasis added)).  McKeachie's NTR Decl. attesting to Plaintiff's salary and attaching his W-2, a business record, *is* summary-judgment-type evidence.

[5] Still, the Court notes that Plaintiff sought $13,200 in attorney's fees ($600 per hour for 22 hours) in connection with the Motion to Remand alone.  [Dkt. 21-1] ¶ 5.  To then turn around and assert that the attorney's fees in this matter are "speculative" and "hypothetical," Remand Reply at 8–9, borders on frivolous.  Plaintiff's interpretation of the W-2, without adjustments for the fact that it has now been more than a year, plus Plaintiff's demanded attorneys' fees, are more than sufficient to satisfy the amount in controversy.

[6] The Court does not rely on evidence not discussed in this Minute Order.  The Court thus **overrules** as moot Plaintiff's Evidentiary Objection Number 1 to the NTR Declarations, [Dkt. No. 22], and Plaintiff's Evidentiary Objections Number 1, 5, and 6 to the Opp. Declarations, [Dkt. No. 26-1].  The Court **denies** as moot Plaintiff's Motion to Strike.  [Dkt. No. 25].

[7] Because the Motion to Remand is denied, Plaintiff's accompanying requests for fees and costs is also denied.  *See* Motion to Remand at 11–13.
    Defendants request that the Court sanction Plaintiff's counsel in the amount of $4,990 for Defendants' costs and attorneys' fees in opposing the Motion to Strike, which they argue was legally frivolous and filed in violation of the Court's Local Rules.  Strike Opp. at 6–8.  The Court declines to do so at this juncture, but reminds Plaintiff's counsel of its power to sanction for "unreasonabl[e] and vexatious[]" "multipli[cation] [of] the proceedings," 28 U.S.C. § 1927, frivolous filings, Fed. R. Civ. P. 11(b), and violations of the local rules, C.D. Cal. L.R. 83-7.